UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| REBECCA THORPE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:21-CV-241-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION | ) | **MEMORANDUM OPINION** |
| OF POWELL COUNTY, | ) | **AND ORDER** |
| KENTUCKY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Supplemental Motion for Summary Judgment filed by Defendants Board of Education of Powell County, Superintendent Anthony Orr, and Principal Brian Wilson. [R. 19]. Plaintiff Rebecca Thorpe filed a Response [R. 26], and the Defendants filed a Reply [R. 28]. On September 5, 2023, the Court entered an Order allowing Thorpe to file a supplemental response addressing the issue of whether Kentucky law allows a private right of action for her state constitutional claim. [R. 30]. Thorpe filed a supplemental response, and the Defendants filed a sur-reply. [R. 31; R. 32]. For the following reasons, the Defendants' Supplemental Motion for Summary Judgment [R. 19] will be **GRANTED**.

**I.  Background**

During the 2020-21 school year, Thorpe worked at Powell County High School, where she held the position of FMD Instructional Aid. *See* [R. 11-3 (Wilson affidavit), p. 1 ¶ 2].[1] She was

---

[1] The Defendants originally filed a Motion to Dismiss and/or Motion for Summary Judgment. *See* [R. 11]. After deposing Thorpe, the Defendants filed a Supplemental Motion for Summary Judgment. *See* [R. 19-1, p. 1]. Upon consideration, the Court denied the Defendants' original motion as moot and allowed briefing to proceed on the supplemental motion. *See* [R. 21]. Because the Defendants rely on the exhibits attached

- 1 -

hired as a non-tenured, classified hourly employee pursuant to a one-year employment contract. [R. 11-4 (employment contract), p. 1]; *see also* [R. 26, p. 1].

On October 22, 2020, Principal Wilson contacted Thorpe by text message, telling her that he was not aware that she had been absent that day or the day before. [R. 11-3 (text messages attached to Wilson's affidavit), p. 4]; *see also* [R. 11-3, p. 1 ¶ 4 (suggesting Thorpe had been absent on October 20-21, 2020); R. 15-1 (Thorpe affidavit), p. 1 ¶ 4(a) (suggesting Thorpe requested time off for October 22-23, 2020)]. Principal Wilson asked Thorpe whether she had entered her time off through Frontline, an application used by Powell County Schools to record and manage absences and find substitutes, which "its employees are required [to use] to report all work absences." [R. 11-3, p. 1 ¶ 4; R. 11-5 (Kincaid affidavit), pp. 1 ¶ 2, 4]. Thorpe responded and told Principal Wilson that she thought she only needed to report the absence to a teacher in her classroom. [R. 11-3, p. 4; R. 19-2 (Davis's deposition), p. 6]. Relatedly, Thorpe testified that she had never reported any of her absences through Frontline. [R. 19-2, p. 7].

Thorpe had requested time off that weekend to attend a rally for then-presidential candidate Donald Trump. *See id.* at 8. On October 26, 2020, Thorpe met with Principal Wilson and others and was told that she should not go back into the classroom because she had attended the rally. [R. 15-1, p. 1 ¶ 4(d)]. Thorpe testified that she was not allowed back into the classroom "due to COVID, because [she] had crossed state lines." [R. 19-2, pp. 8-9 (suggesting Thorpe may not have been allowed in the classroom based on the increased risk of complications from COVID of students with special needs, but that she was assigned to a different classroom)]. Additionally, she testified that she was not suspended or docked pay "at that point" following her return from the rally. *See id.* at 9:17-22.

---

to the original motion in making their arguments in their supplemental motion, the Court will also consider those exhibits. *See generally* [R. 19-1 (citing exhibits attached to [R. 11])].

On November 24, 2020, Thorpe filed a grievance, alleging harassment by a teacher in her classroom and another individual. [R. 26-1 (grievance); R. 19-2, p. 10]. The grievance references several interactions between Thorpe and other staff members, including someone "having an issue with [her] going out of state to a Trump rally." *See* [R. 26-1, p. 4]. Jennifer Kincaid, the Director of Human Resources for Powell County Schools, completed review of the grievance and "determined that the alleged conduct of other employees that served as the basis for Rebecca Thorpe's grievance did not rise to a level that constituted harassment." [R. 11-5, p. 1 ¶ 6]. Additionally, Principal Wilson met with Thorpe and others regarding the grievance, and after the meeting, Thorpe refused to return to her assigned classroom. [R. 11-3, p. 1 ¶ 5; R. 19-2, p. 12].

As a result of her refusal to return to her assigned classroom, Thorpe was temporarily suspended from her position at Powell County High School at the end of November 2020. *See* [R. 11-3, pp. 1-2 ¶ 5; R. 19-2, p. 12:6-11 ("Q What was the result, after you refused to return to the classroom? A I had to go back to the classroom. It wasn't -- you know, it was not -- it was not optional. Q Were you suspended? A That day, I was sent home, yes.")]. Notably, she testified that no one at the meeting told her that the rally in any way contributed to the decision to suspend her, and she agreed that the "one-day suspension" was instead "for refusing to return to the classroom." [R. 19-2, pp. 13:23-14:1 ("Q Okay. Did anyone in that meeting tell you that the rally was in any way, you know, contributing to the suspension, the decision to suspend you? A No.")].

The record is unclear regarding the length of Thorpe's suspension, and whether it was with or without pay. For example, Principal Wilson's affidavit states that Thorpe was suspended without pay from November 24-29, 2020, but Thorpe testified the suspension was only for one day, and her Complaint suggests the suspension was *with* pay. *Compare* [R. 11-3, p. 2 ¶ 7] *with*

[R. 19-2, p. 12; R. 1, p. 2 ¶ 10]. Thorpe returned to work following her suspension, and her position was changed to be a "floater." [R. 11-3, p. 2 ¶ 6; R. 15-1, p. 1 ¶ 8].

After she returned to work, Thorpe continued to have issues with other individuals, and she sent Kincaid numerous emails and text messages "reiterating similar allegations to those set forth in her grievance," but the exact nature of such allegations is not clear from the record. [R. 11-5, p. 2 ¶ 7]. In January 2021, Principal Wilson scheduled another meeting with Thorpe and one of the teachers she had issues with and told Thorpe she needed to attend the meeting. [R. 19-2, p. 15]. Thorpe did not attend the meeting because she "felt that [Principal Wilson] was not being open to what was going on, into the classroom." *Id.* at 16:5-6. After Thorpe's failure to attend that meeting, Principal Wilson requested to Superintendent Orr that Thorpe be disciplined for insubordination.[2] *See* [R. 1, p. 2 ¶ 14]. The record is unclear if any disciplinary measures were taken against Thorpe at this time.

In February 2021, Thorpe attempted to resign by text message to administration, but Kincaid informed her by email that a text message could not be accepted as a formal resignation. [R. 19-2, p. 46]. Thorpe responded by email and stated that she would work on her resignation and turn it in on February 16. *Id.* The record does not reveal that Thorpe ever submitted a formal resignation at that time. Instead, she incurred at least thirty-three absences from February 2, 2021, through March 16, 2021, which she told Kincaid were all due to anxiety. [R. 11-5, p. 2 ¶ 8].

Kincaid repeatedly requested that Thorpe provide a doctor's excuse confirming the reason for her absences, and although Thorpe provided an excuse for many of the absences, she did not provide an excuse for at least ten of them, and the excuses she did provide did not state the reason

---

[2] In their supplemental motion, the Defendants represent that Principal Wilson only reported Thorpe's misconduct to Superintendent Orr and did not recommend any specific action be taken against her. [R. 19-1, p. 4 n.20].

for any of her absences. *Id.*; [R. 19-2, pp. 25, 44-45]. Thorpe herself acknowledged during her deposition that there were some absences that were not covered by doctor's excuses. *See* [R. 19-2, p. 34]. Kincaid informed Thorpe that she would be subject to discipline, including but not limited to termination, and Thorpe requested a hearing to contest the discipline pursuant to the Powell County Handbook 3.AP.21. *See* [R. 1, p. 3 ¶¶ 16-17].

On March 17, 2021, a meeting was held at central office regarding allegations against Thorpe of insubordination in refusing to attend the meeting in January 2021 and her unexcused absences. [R. 19-2, p. 20; R. 1-2]. Thorpe was provided with written notice of the issues to be addressed at the hearing. *See* [R. 1-2, p. 1]. Relevant here, Superintendent Orr, Principal Wilson, Kincaid, and Thorpe attended the meeting; Thorpe "concedes that this was a required pre-termination hearing." [R. 19-2, p. 22; R. 26, p. 8]. Thorpe testified that the meeting "was more or less" over "[her] days" and that Superintendent Orr ultimately told Thorpe that she either had the option to leave or be terminated. [R. 19-2, p. 22:12-15]. No one at the meeting mentioned the Trump rally as the basis for Thorpe's discipline. *Id.* at 23. Thorpe was thereafter terminated from her position and chose to appeal her termination. *See* [R. 11-5, p. 2 ¶ 9]; *see also* [R. 1, p. 5 ¶ 37 ("At the conclusio[n] of the meeting [on March 17, 2021], the Plaintiff was told by Defendant Orr that her employment with the Defendant Board of Education of Powell County was terminated.")].

Superintendent Orr served as the hearing officer at Thorpe's appeal hearing. [R. 19-2, p. 27]. Thorpe objected to Superintendent Orr serving as the hearing officer, but Superintendent Orr overruled the objection. *See* [R. 1-3, p. 1 ("The objection was overruled as I was not an investigator nor prosecutor in this matter, per KRS 13B 040, PCS Board Policy 3.27, and Administrative Procedure 3.27 AP.1.")]. At the hearing, Thorpe was represented by her current counsel, and she, Kincaid, and Principal Wilson all testified as sworn witnesses. *Id.* As a final decision,

Superintendent Orr upheld Thorpe's termination, finding (1) that she had refused to attend a mandatory meeting that had been convened by her supervisor, having been informed that her refusal to attend the meeting would be an insubordinate act, and (2) that she had accumulated too many absences for which she had not provided proper notification or documentation. *Id.*

Nearly five months after she was terminated, Thorpe filed her Complaint in this action on September 30, 2021. *See* [R. 1]. In addition to the Board of Education, she named as defendants Superintendent Orr and Principal Wilson in their individual and official capacities. *See id.* at 1. Through her Complaint, Thorpe alleges "that she was terminated from her position with the Board of Education of Powell County without procedural due process guaranteed by the Fourteenth (14th) Amendment to the Constitution." *See id.* at 1 ¶ 1. She also alleges violation of her rights under the First Amendment and under Section 2 of the Kentucky Constitution. *See id.* at 3-6.

On October 21, 2021, the Defendants filed an Answer to Thorpe's Complaint [R. 4], and on March 22, 2022, they filed a Motion to Dismiss and/or Motion for Summary Judgment [R. 11]. Nearly eight months later, on October 3, 2022, the Defendants filed a Supplemental Motion for Summary Judgment, following the taking of Thorpe's deposition. [R. 19-1, p. 1]. Upon review, the Court denied the Defendants' Motion to Dismiss and/or Motion for Summary Judgment as moot, construed the supplemental motion as a renewed motion for summary judgment, and set a briefing schedule on the renewed dispositive motion. [R. 21 (also addressing Thorpe's Motion to Strike [R. 20])]. Thorpe filed a Response to the Motion, and the Defendants filed a Reply. [R. 26; R. 28]. Recently, the Court gave Thorpe the opportunity to file a supplemental response addressing whether Kentucky law supports her state constitutional claim. *See* [R. 30]. Thorpe filed a supplemental response, and the Defendants filed a sur-reply. [R. 31; R. 32]. The Defendants' Supplemental Motion for Summary Judgment [R. 19] thus stands submitted for review.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The initial burden of establishing that no genuine dispute of material fact exists rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324-25. When, as here, defendants move for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Where "a party fails to support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat the fact as undisputed. Fed. R. Civ. P. 56(e)(2). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. Analysis

Thorpe presents three causes of action in her Complaint. First, she alleges that the Defendants violated her First Amendment rights "by disciplining [her] for attending a political rally in October, 2020." [R. 1, p. 4 ¶ 29]. Second, she alleges her "right to procedural Due Process was violated when she was denied an impartial decision maker" by Superintendent Orr serving as the hearing officer at her appeal hearing. *Id.* at 5 ¶ 44. Third, she alleges that the Board of Education violated Section 2 of the Kentucky Constitution by failing to provide her with a fair and impartial hearing officer. *Id.* at 5 ¶ 47.

#### a. First Amendment Claim

Thorpe first claims that her First Amendment rights were violated because she was disciplined for attending a political rally in October 2020. *See* [R. 1, p. 4]. This claim is brought pursuant to 42 U.S.C. § 1983. To establish liability under § 1983, Thorpe must demonstrate: (1) that she was deprived of a right secured by the Constitution or laws of the United States, and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby Cnty.*, 220 F.3d 433, 441 (6th Cir. 2000).

To prevail on a claim of retaliation for activity protected by the First Amendment, Thorpe must show that: (1) she engaged in protected conduct, *i.e.*, constitutionally protected speech; (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by her protected conduct. *See Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)); *see also Williams v. Zurz*,

503 F. App'x 367, 371 (6th Cir. 2012) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011)). If Thorpe meets this initial burden, it then falls to the Defendants to show that they would have taken the same adverse action even in the absence of the protected speech. *See Williams*, 503 F. App'x at 371; *Dye v. Off. of Racing Comm'n*, 702 F.3d 286, 294-95 (6th Cir. 2012) ("If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant. Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims.") (cleaned up). "Once this shift occurs, summary judgment [in the defendants' favor] is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant[s]." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010); *see also Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019) (citing *Dye*, 702 F.3d at 294; *Eckerman*, 636 F.3d at 208).

Turning to the elements of Thorpe's prima facie case, the "Defendants do not dispute that Plaintiff's attendance at the rally was a constitutionally protected activity" under the first element.[3]

---

[3] In her Response, Thorpe contends that her filing of a grievance was also protected speech. *See* [R. 26, p. 5 ("The second protected activity was when she filed her grievance alleging workplace harassment.") (internal citation omitted)]. The Defendants rightly argue such a claim is not before the Court because Thorpe neither included such allegations in her Complaint as a basis for her First Amendment claim nor filed a motion to amend her Complaint. *See* [R. 28, p. 2]; *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005) (affirming district court's refusal to consider a claim argued for the first time in response to a motion for summary judgment because plaintiff could have moved to amend her complaint before dispositive motions were filed). However, even if the Court were to consider Thorpe's filing of a grievance under the first element of her prima facie case, her First Amendment claim still fails for all the reasons discussed herein; in particular, the Defendants have demonstrated by a preponderance of the evidence that they would have taken the same actions against Thorpe in the absence of her protected conduct. *See infra* pp. 12-14.

[R. 19-1, p. 7]. Thus, the Court moves on to consider the other two elements. *See Napolitano*, 648 F.3d at 372 ("In this case, Defendants do not challenge Plaintiffs' participation in constitutionally protected activity, and we will assume, for purposes of this appeal, that this element is satisfied and accordingly focus on the remaining two elements.").

As to the second element regarding an adverse action, Thorpe's Complaint contains two actions that the Defendants address: (1) her suspension in November 2020; and (2) her ultimate termination in March 2021. *See generally* [R. 1, pp. 2 ¶ 10, 3 ¶ 20]. Here, the Defendants dispute that Thorpe's suspension qualifies as an adverse action, arguing that "the suspension did not change the terms of her employment, where she remained in the identical position as before." *See* [R. 19-1, pp. 9-10]. Importantly, Thorpe did not respond to this argument in her briefing, so the Court considers it conceded, meaning it views only her termination as an adverse action. *See Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*.") (emphasis in original); *see also Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up). The Defendants do not dispute that termination can be an adverse action. *See* [R. 19-1, p. 9 ("Aside from her termination, none of the actions of the Defendants rose anywhere near the level necessary to constitute a materially adverse employment action.")].

Moving to the third element, "[i]n order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse action] would not have

occurred but for [her] engagement in protected activity." *Eckerman,* 636 F.3d at 209. "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation." *Id.*; *see also Sensabaugh*, 937 F.3d at 628 (citing *Dye*, 702 F.3d at 294; *Eckerman*, 636 F.3d at 208).

In this case, Thorpe has provided no direct evidence that she was terminated for attending the rally. Instead, she pointedly testified that no one at the hearing on March 17, 2021, discussed the rally "as a basis for discipline," and that Superintendent Orr never mentioned the rally to her. *See* [R. 19-2, p. 23:6-9 ("Q Okay, and you know, once again, did anybody at the meeting mention the rally as a basis for the discipline? A No."); R. 19-2, pp. 38:25-39:2 ("Q Superintendent Orr never said anything to you about the Trump rally, correct? A No, he didn't say really anything, I guess.")]. And even assuming Thorpe's suspension could meet the adverse action element of her prima facie case, Thorpe testified that she was suspended for her refusal to return to the classroom, not for attending the rally. *See* [R. 19-2, p. 12:18-23 ("Q Okay, and you agree that that suspension, that one-day suspension, was for refusing to return to the classroom, correct? A Yes, I do – Q Okay. A Yes, that was all me, absolutely."); R. 19-2, pp. 13:23-14:1 ("Q Okay. Did anyone in that meeting tell you that the rally was in any way, you know, contributing to the suspension, the decision to suspend you? A No.")].

Rather than rely on any direct evidence of retaliation, Thorpe relies on the temporal proximity of her termination following her attendance to the rally—a period of nearly five months— as satisfying the causation element. *See* [R. 26, pp. 5-6 ("In the Plaintiff's case, the Court can draw an inference of causation where the Defendant took advantage of their first meaningful opportunity to retaliate against the Plaintiff. George v. Youngstown State Univ., 966

F.3d 446 (6th Cir. 2020).")]. Notably, the Sixth Circuit has "recognized the limitations to using temporal proximity alone" to find causation. *Dye*, 702 F.3d at 306; *see also Williams*, 503 F. App'x at 373 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). Even so, certain courts have found the temporal proximity of several months alone as sufficient to satisfy the causation element. *See Dye*, 702 F.3d at 306 (three months); *see also Barry v. O'Grady*, 2:14-cv-2693, 2017 WL 1234048, at *24 (S.D. Ohio Mar. 31, 2017) ("A reasonable jury could infer from this temporal proximity that Barry was transferred to the SRO position in retaliation for the protected speech that she engaged in just several months earlier."). *But see Sensabaugh*, 937 F.3d at 629-30 ("The termination, however, came almost six months later. And even if we agreed that temporal proximity could provide a suggestion of causation here, temporal proximity alone is rarely, if ever, sufficient to establish causation. There generally must be other indicia of retaliatory conduct.") (internal citation omitted). The gap of five months between Thorpe's attendance to the rally and her termination appears to be right on the line for what courts will consider sufficient to satisfy causation without other evidence.

However, even assuming Thorpe has satisfied the causation element by solely pointing to the temporal proximity in this case, the Defendants have demonstrated "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Dye*, 702 F.3d at 294 (internal quotation marks omitted). To be sure, the Defendants have more than carried their burden to demonstrate that Thorpe's insubordination for failing to attend the January 2021 meeting with Principal Wilson and her demonstrated absenteeism were reasons she would have been terminated absent her attendance to the rally. *See* [R. 19-1 (Defendants' brief), pp. 13-14; R. 19-2 (Davis's deposition), pp. 16-17; R. 11-5 (Kincaid affidavit), p. 2 ¶ 8; R. 11-3 (Wilson affidavit), p. 2 ¶ 6].

Thorpe has not disputed the veracity of these reasons, pointed to evidence that creates a genuine issue of material fact regarding these reasons, or, indeed, *presented any argument against them* in her Response. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion."); *see also Palma*, 27 F.4th at 429 n.1 ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*.") (emphasis in original); *Cunningham*, 957 F. Supp. 2d at 921 ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up).  Instead, Thorpe readily admitted during her deposition that she refused to attend the January 2021 meeting (the grounds for insubordination), *see* [R. 19-2, pp. 16-17], and that she had numerous unexcused absences:

> Q  Okay, and you don't dispute that you missed some days.
>
> A  I did.  I did miss some days.  Yes, I did.
>
> Q  And you don't dispute that you had -- or you know, regardless of the adequacy of some of the doctor's notes, that there were some dates that you missed, that you did not have doctor's notes covering, correct?
>
> A  There were some days that I missed. Yes.
>
> Q  And you don't dispute that you refuse to attend the meeting in late January with Principal Wilson.
>
> A  Absolutely. I was fed up at that point. I mean, when you leave his office crying so many times, you're -- you know, you're over it.

[R. 19-2, p. 21:10-23].

The evidence demonstrates that around the time Thorpe attempted to resign from her position via text message in early February 2021, [R. 19-2, pp. 3-7, 46], she also essentially stopped

- 13 -

showing up for work. Between February 2, 2021, and March 16, 2021, she incurred at least 33 absences. *See* [R. 11-5, p. 2 ¶ 8]. Thorpe told Kincaid that the absences were based on her anxiety at the time. *See id.* However, Thorpe failed to provide doctor's excuses for at least ten of those absences. *See id.*; *see also* [R. 11-3, p. 2 ¶ 6]. And even the doctor's excuses Thorpe did provide failed to state the reason for any of her absences. [R. 11-5, p. 2 ¶ 8; R. 19-2 (images of excuses attached to Davis's deposition), pp. 44-45].

And, again, even if the Court were to find that Thorpe's November 2020 suspension qualified as an adverse action, she readily admitted that her suspension was for refusing to return to her classroom as directed, not due to her attendance at the rally:

> Q  Okay, and you agree that that suspension, that one-day suspension, was for refusing to return to the classroom, correct?
>
> A  Yes, I do -- Q  Okay.
>
> A  Yes, that was all me, absolutely.

[R. 19-2, p. 12:18-23].

On this record, the Court finds that the Defendants have carried their burden to demonstrate by a preponderance of the evidence they would have taken the same actions against Thorpe in the absence of her protected conduct based on her insubordination and unexcused absences. *See Dye*, 702 F.3d at 294. The Defendants are, accordingly, entitled to summary judgment on her First Amendment claim.

### b. Due Process Claim

Thorpe next claims a violation of her procedural due process rights. *See* [R. 1, pp. 4-5]; *Fields v. Henry Cnty.*, 701 F.3d 180, 185 (6th Cir. 2012) ("The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process."). Specifically, Thorpe

points to her status as an employee of the Powell County Board of Education, with a "protected interest in continued employment." *See* [R. 1, p. 4 ¶ 32]. She further argues that the Constitution "mandate[s] an impartial decisionmaker for the purpose of Procedural Due Process," that her employment could not be taken without procedural due process, and that her due process rights were violated by Superintendent Orr serving as the hearing officer at her appeal hearing. *See* [R. 26, p. 8].

As with her First Amendment claim, Thorpe purports to bring her procedural due process claim pursuant to § 1983. However, as the Defendants argue, her due process claim must fail because it is not *properly* brought pursuant to § 1983 based on the property interest she seeks to protect. *See* [R. 19-1, p. 14]. The Sixth Circuit has explained:

> even when a person's means of livelihood is connected to the deprivation claim, due process does not always require a predeprivation hearing or support a section 1983 action when any interest in employment is affected. When a person is hired for a fixed period of time or pursuant to a contract providing for employment "at will" or impliedly subject to removal upon the *bona fide* elimination of the position, and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract. This is due to the fact that a nontenured employee's property interest in continued employment is created and defined by the employee's contract. The employee has a property interest in employment for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action.

*Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (internal citations omitted) (collecting cases).

There is no dispute in this case that Thorpe's employment contract was for one year and classified her as an hourly, non-tenured employee. *See* [R. 11-4, p. 1; R. 26, p. 1]. Thus, her employment contract falls squarely within the rule discussed in *Ramsey*, meaning § 1983 is not the proper vehicle for her to have brought her due process claim. *See Cecil v. Ky. Cmty. & Tech. Coll.*

- 15 -

*Sys.*, Civil Action No. 20-6-DLB, 2021 WL 4129973, at *4 (E.D. Ky. Sept. 9, 2021) ("Plaintiff's claims under the Due Process Clause through § 1983 fail[] because while his position as a non-tenured professor at KCTCS may be properly considered a property interest, § 1983 is not the proper avenue to redress his injury."); *Carroll v. Knox Cnty. Bd. of Ed.*, Nos. 3:07-cv-345, 3:08-cv-73, 2010 WL 2507046, at *11 (E.D. Tenn. June 17, 2010) (holding that where a "teacher has a fixed-term interest in the supervisory position created solely by contract, Section 1983 does not provide an appropriate remedy for the deprivation of such property interest" and that "the appropriate remedy is to file a breach of contract claim under state law"). Like the plaintiffs' claims in *Cecil* and *Carroll*, Thorpe's claim is grounded solely on her one-year contract as establishing her property interest. But under Sixth Circuit precedent, a breach of contract action under Kentucky law is the proper avenue for Thorpe to redress her claimed injury. *See Cecil*, 2021 WL 4129973, at *5 ("[B]ecause Cecil relies only on his contract with KCTCS to establish a protected property interest, his injury cannot be redressed through § 1983 and instead must be redressed through an ordinary contract action in state court.").

Moreover, despite the Defendants arguing this very ground for summary judgment in their supplemental motion, *see* [R. 19-1, p. 14], Thorpe (perhaps recognizing the strength of the Defendants' argument) does not address it at all; she has therefore conceded the point. *See Palma*, 27 F.4th at 429 n.1 ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*.") (emphasis in original); *see also Cunningham*, 957 F. Supp. 2d at 921 ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up).

In such a posture, the Court will grant summary judgment to the Defendants on Thorpe's procedural due process claim.

### c. State Law Claim

Finally, Thorpe claims that "[t]he arbitrary and capricious acts of the Powell County Board of Education violated Article II of the Kentucky Constitution." [R. 1, p. 5 ¶ 48]. Although Thorpe describes this claim as being based on Article II of the Kentucky Constitution, it appears Thorpe intended to plead a violation of Section 2 of the Kentucky Constitution, which states: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2. Regarding compensation on this claim, Thorpe alleges that "[a]s a result of the acts of the Powell County Board of Education the Plaintiff has been emotionally and economically harmed." *See* [R. 1, p. 6 ¶¶ 49, 5 (requesting that "[t]he Court award the Plaintiff compensatory damages and damages for embarrassment and humiliation for Defendant's blatant violation of the Plaintiff's constitutional rights")]; *see also Conn v. Deskins*, 238 F. Supp. 3d 924, 930 (E.D. Ky. 2017).

However, "Kentucky has not recognized a private right of action akin to *Bivens* to recover money damages for a violation of the state's constitution." *Conn*, 238 F. Supp. 3d at 930 (collecting cases); *see also Sanderson v. Louisville Metro Gov't*, No. 3:23-CV-00138-JHM, 2023 WL 5490175, at *8 (W.D. Ky. Aug. 24, 2023); *Curtis v. Breathitt Cnty. Fiscal Ct.*, 288 F. Supp. 3d 789, 801-02 (E.D. Ky. 2018); *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 531-32 (Ky. 2011) ("We hold that an action for money damages under KRS 446.070 is not available for alleged constitutional violations, and we decline Straub's invitation to create judicially a new constitutional tort in Kentucky because adequate remedial alternatives exist in the common law."). And neither can "§ 1983 be used as a statutory vehicle to vindicate state constitutional claims."

*Sanderson*, 2023 WL 5490175, at *8. Further, when courts have considered the merits of claims brought under Section 2 of the Kentucky Constitution, the relief sought appears to have been reinstatement or injunctive relief. *See generally Bd. of Educ. of Ashland v. Jayne*, 812 S.W.2d 129, 130 (Ky. 1991) (in reversing decision of the Kentucky Court of Appeals, noting the trial court had reinstated respondents to their former positions); *cf. Faul v. Bd. of Educ. of Danville Indep. Sch.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013) ("[A] review of her Complaint reveals that she is not seeking injunctive relief or plead reinstatement as a potential measure of recovery. Accordingly, Kentucky law does not recognize a cause of action to support Faul's claim based on Section 2 of the Kentucky Constitution.").

Because neither Thorpe nor the Defendants addressed this law in their initial briefing, *see* [R. 19; R. 26; R. 28], the Court provided Thorpe with an opportunity to file a supplemental response and the Defendants to file a sur-reply. *See* [R. 30]. In her supplemental filing, Thorpe does not dispute that Kentucky law provides no private right of action to recover money damages based on Section 2 of the Kentucky Constitution. *See* [R. 31, p. 2]. Further, she acknowledges that her Complaint "does not request injunctive relief," but posits that the "'Wherefore' clause of her Complaint specifically asks that the Court award her 'any and all relief' to which she may be entitled" and that this "Paragraph of her request is broad enough to include reinstatement, although not specifically stated." *Id.*

However, as the Defendants argue, any attempt by Thorpe to amend her complaint now is clearly untimely and would be prejudicial to the Defendants. *See* [R. 32]; *see also Tucker*, 407 F.3d at 789 (affirming district court's refusal to consider a claim argued for the first time in response to a motion for summary judgment because plaintiff could have moved to amend her complaint before dispositive motions were filed). The legal conclusion thus remains that Thorpe's

Kentucky constitutional claim, as pled in her Complaint, simply fails under state law. *See Sanderson*, 2023 WL 5490175, at *8 ("Kentucky law, however, is clear that the Commonwealth's Constitution provides no direct private right of action for damages based on violations of state constitutional law."). Therefore, the Defendants are also entitled to summary judgment on this claim.

### IV.     Conclusion

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

**1.**   The Defendants' Supplemental Motion for Summary Judgment [R. 19] is **GRANTED**.

**2.**   A separate judgment shall issue.

This the 27th day of September, 2023.

*[Signature: Claria Horn Boom]*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY